UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACOB S. DAVIS,<br><br>           Plaintiff,<br><br>     v.<br><br>REBECCA STRAUSS; PASLEY S. HOLMES; KRISTINA PERALES; and KRISTIN SEPEDA,<br><br>           Defendants. | Case No. 1:26-cv-00105-AKB<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Jacob S. Davis's Complaint because of Plaintiff's status as an inmate and in forma pauperis request. A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

Plaintiff has since filed an Amended Complaint as instructed by the Court. *See* Dkts. 8, 9. Having reviewed the record, the Court enters the following Order (1) permitting Plaintiff to proceed on some of the claims in the Complaint and (2) denying Plaintiff's Motion for a Preliminary Injunction.

## 1.     Standards of Law for Screening Complaints

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**2.      Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Institution. Plaintiff has been convicted of lewd conduct with a child, sexual battery of a minor, sexual exploitation of a child, and failure to notify the sex offender registry of a change in his address. *See State v. Davis*, No. 50110, 2024 WL 3024665, at *1 (Idaho Ct. App. June 17, 2024) (unpublished). Plaintiff asserts that prison officials—specifically, access to courts staff such as prison paralegals—have hindered him from pursuing civil rights litigation, state post-conviction relief, and a pardon application.

Plaintiff alleges that, under SOP 607.26.01.016, the IDOC permits inmates to purchase, and keep in their cells, computers and other electronic devices for purposes of education courses

INITIAL REVIEW ORDER BY SCREENING JUDGE - 2

and prison employment. These devices have at least some restricted internet access. *Am. Compl.* at 3. Idaho prisons also have some "spare" computers for inmates to use in their cells. *Id*. at 4.

Inmates can also keep paper legal materials in their cells, the amount of which is obviously limited by the available space in the cells. However, if inmates receive documents in electronic form—for example, on a CD or USB drive containing documents produced in discovery during litigation—the inmates may not keep the CD or drive in their cells to access via their personal computers. *Id*. at 3. Instead, the prison permits inmates to access and review those electronic files in the Access to Courts Center, which appears to be a computer lab or library. *Id*. at 3–4.

Before November 2024, Plaintiff had about 11 hours per week to access the computers to review electronic discovery and to prepare legal documents. Plaintiff then filed a civil rights lawsuit against "IDOC staff." After he filed the suit, Plaintiff's time in the computer lab was reduced to approximately 3 hours per week. As a result, Plaintiff has "been unable to review a large portion of his electronic legal materials to prepare documents and litigations" and was "forced to transcribe" recordings multiple times. *Id*. at 4–5.

Plaintiff also alleges that, from December 5, 2024 to January 11, 2025, Defendant Holmes—the prison's access to courts coordinator—and an unidentified prison paralegal denied Plaintiff access to his electronic legal materials because he was awaiting a housing assignment to protective custody. From January 11 to February 24, 2025, Plaintiff was able to access his materials three times per week for about 1.5 to 2 hours each time. Plaintiff asked to purchase a laptop, but the request was denied by an unidentified prison official. *Id*.

From February to May 2025, Holmes and IDOC paralegal Perales also allegedly "deprived the Plaintiff of wholesale access to electronic legal materials." Contrary to prison regulations, these Defendants then "accessed and reviewed" the materials. Holmes determined some of the electronic

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

files would be "confiscated" from the USB drive and provided Plaintiff with a list of those files. Plaintiff responded with an explanation of why the documents were necessary to his litigation activities. *Id.* at 5–6.

"In an effort to preserve and utilize said confiscated legal materials in support of his petition for postconviction relief," Plaintiff mailed the USB drive to an Idaho state court. *Id.* at 6. However, because Plaintiff had not yet filed a post-conviction petition, the clerk sent the drive back to Plaintiff. *Id.* at 7. At some point, Plaintiff did file a post-conviction petition.

Even though Plaintiff was scheduled to have time to review his electronic materials for several hours each week, on some occasions he was unable to do so. For example, when Plaintiff was ill or had attorney visits, or when the lab or library was closed for GED graduations, Plaintiff missed some chances to access and review the materials. *Id.* at 7–10.

According to Plaintiff, on September 11, 2025, Holmes and IDOC paralegal Sepeda "refused to allow Plaintiff to file" evidence in support of his response to the state court's notice of intent to dismiss his post-conviction petition. Allegedly as a result of this lack of evidence, the court dismissed Plaintiff's petition. *Id.* at 7. Plaintiff appealed, but he later dismissed the appeal "due to not having evidence from said confiscated legal materials as part of the appealable record." *Id.*

On September 28, 2025, Plaintiff asked paralegal Sepeda about accessing and printing documents to support his application for a pardon. Because a pardon was "not identified by IDOC as a 'qualified legal claim,'" Sepeda denied Plaintiff's request. *Id.* at 7–8.

Several months later, Sepeda told Plaintiff that "he could no longer type transcripts of … recordings" and "could not review or access files already transcribed." This forced Plaintiff "to re-

re-transcribe recordings[,] effectively wasting over three (3) years labors" and "post-poning [sic] his ability to apply for pardons." *Id*. at 8.

Plaintiff asked for extra time to access his electronic legal materials, but Sepeda responded that there were no additional time slots available. Plaintiff believes this was untrue. *Id*.

During the course of a lawsuit Plaintiff filed in the United States District Court for the District of Arizona, Plaintiff received 1,800 pages of discovery in electronic form. When Plaintiff attempted to review these materials, he learned that half of them were inaccessible because the prison computer lacked the required software. Holmes denied Plaintiff's request that the prison purchase and install the software. *Id*. at 9.

Plaintiff also asked for printouts of 600 pages of electronic files produced in that litigation. Paralegal Sepeda denied the request, stating that prison policies did not authorize the printouts. *Id*. at 10.

Plaintiff sues Rebecca Strauss, a deputy attorney general for the State of Idaho, as well as Defendants Holmes, Perales, and Sepeda. Plaintiff claims Defendants have violated his First and Fourteenth Amendment right to access the courts. *See id*. at 17–18 (setting forth five claims of access-to-courts violations). Claim 1 challenges Defendants' "handling of [Plaintiff's] electronic legal material." *Id*. at 17. Claim 2 alleges violations based on lack of opportunities to review electronic legal materials, as well as the decrease in the amount of time Plaintiff could access those materials, with respect to Plaintiff's conditions-of-confinement claims in his Arizona civil rights case. In Claim 3, Plaintiff challenges Defendants' actions that allegedly hindered him from applying for a pardon. Claims 4 and 5 reassert the pardon claim but also appear to allege that Plaintiff's state post-conviction petition was dismissed because of Defendants' refusal to allow him to submit evidence in support of that petition.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 5

3.      **Discussion**

   *A.      Standards of Law*

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. *Am. Compl.* at 1. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists … a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the

constitutional deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### B.    The Complaint States Some Plausible Access to Courts Claims

Prisoners have a right to access the courts under the First and Fourteenth Amendments. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, because the right of access to the courts is not an "abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Although a prison law library "does not provide for meaningful access to the courts if the inmates are not allowed a reasonable amount of time to use the library," prison officials are constitutionally permitted to impose reasonable regulations regarding the time, place, and manner in which library facilities are used, so that all inmates can access the law library in a secure and orderly manner. *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 858 (9th Cir. 1985).

To state a viable access-to-courts claim, a plaintiff must plausibly allege that he suffered an actual injury as a result of the defendant's actions. *Lewis*, 518 U.S. at 349. Actual injury may be manifest if the alleged denial of access "hindered [the plaintiff's] efforts to pursue a legal claim," such as having his complaint dismissed "for failure to satisfy some technical requirement," or if the plaintiff "suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by [the defendants' actions] that he was unable even to file a complaint." *Id.* at 351.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 7

The Constitution does not require that inmates "be able to conduct generalized research," nor does it "guarantee inmates the wherewithal to transform themselves into litigating engines." *Id*. at 355, 360. Rather, the right of access to the courts requires only that inmates "be able to *present* their grievances to the courts—a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360 (emphasis added). That is, there is no constitutional right for a prisoner to be able "to litigate effectively once in court." *Id*. at 354 (emphasis omitted). Moreover, a plaintiff cannot state an access to courts claim by alleging that a negligent act by a government official caused the actual injury of which the plaintiff complains. *Krug v. Lewis*, 852 F.2d 571 (Table), 1988 WL 74699, *1 (9th Cir. July 6, 1988) ("While prisoners have a due process right of access to the courts, the negligent act of a public official does not violate that right.") (unpublished) (citing *Daniels v. Williams*, 474 U.S. 327, 333 (1986)).

The right of access to the courts is limited and applies only to direct appeals from convictions for which the inmates are incarcerated, habeas petitions, and civil rights actions regarding prison conditions. *Lewis*, 518 U.S. at 354–55; *Silva v. Di Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011) ("[P]risoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without active interference by prison officials.") (emphasis omitted), *abrogated on other grounds by Coleman v. Tollefson*, 575 U.S. 532 (2015). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355 (emphasis omitted).

Claims of denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (a forward-looking access claim) or from the loss of a suit that now cannot be pursued (a backward-looking access claim). *Christopher v. Harbury*, 536 U.S.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 8

403, 413–15 (2002). A complaint alleging a denial of access to the courts must plausibly allege that the plaintiff suffered, or will suffer, the loss of a past or present litigating opportunity. The plaintiff must assert facts supporting three elements: (1) official acts that frustrated the inmate's litigation activities; (2) the loss (or expected loss) of a "nonfrivolous" or "arguable" underlying claim that must be set forth in the federal complaint, including the level of detail necessary "as if it were being independently pursued"; and (3) that the remedy sought through the access to courts claim is not otherwise available in another suit that could be brought. *Id.* at 415-17. "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Id*. at 415.

A prisoner asserting an access to courts claim must also allege facts showing that the alleged violation of his rights was proximately caused by a state actor. *Phillips v. Hust*, 477 F.3d 1070, 1077 (9th Cir. 2007), *vacated on other grounds*, *Hust v. Phillips*, 555 U.S. 1150 (2009); *see also Crumpton*, 947 F.2d at 1420. The proximate cause analysis focuses on whether it was foreseeable that the state actor's conduct would result in a deprivation of the prisoner's right of access to the courts. *Phillips*, 477 F. 3d at 1077 (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 216 F.3d 764, 784–85 (9th Cir. 2000)).

i.    Claims against Defendants Holmes and Sepeda Based on Their Refusal to Permit Plaintiff to Support His Response to the Notice of Intent to Dismiss His State Post-Conviction Petition

Plaintiff's Complaint, liberally construed, appears to state colorable access-to-courts claims against Defendants Holmes and Sepeda with respect to Plaintiff's state post-conviction proceedings. Plaintiff specifically alleges the following: (1) these two Defendants did not allow Plaintiff to provide evidence in his post-conviction proceeding; (2) the evidence would have supported his claim of actual innocence, in that Plaintiff (a) did not change residency and thus had

no duty to notify the sex offender registry of any such change, (b) had no sexual contact with the minor victims, (c) did not possess sexually exploitative materials, and (d) did not commit burglary or larceny; and (3) Plaintiff's post-conviction petition was dismissed with prejudice for failure to support his claim with evidence. These allegations are sufficient to state plausible access-to-courts claims against these Defendants Holmes and Sepeda based on their actions affecting Plaintiff's post-conviction proceedings.

              ii.          <u>Claims Based on Civil Rights Litigation Challenging Conditions of Confinement</u>

With respect to his Arizona civil rights lawsuit for which Plaintiff was unable to access his electronic materials on as many occasions—and for as much time on each occasion—as he would have liked, Plaintiff has not set forth the underlying causes of action that he was allegedly frustrated from pursuing—which are elements "that must be described in the complaint." *Christopher*, 536 U.S. at 415. Plaintiff's failure to plausibly state those underlying civil rights claims is fatal to his access-to-courts claims in this case.

Additionally, Plaintiff has not plausibly alleged an actual injury with respect to his Arizona conditions of confinement claims. Plaintiff has been able to present his claims and protect his interests in the litigation challenging those conditions. Plaintiff might have liked more time to review his discovery and other electronic materials—or might have liked not to have to transcribe documents himself—but those are merely incidental and constitutional consequences of his incarceration. *See Lewis*, 518 U.S. at 355. Inmates have a right to litigate their challenges to prison conditions—not to litigate those challenges *effectively*. *Id*. at 354. Plaintiff's desire for prison officials to help him become a litigating engine is insufficient to state a plausible access-to-courts claim. *Id*. at 355.

   iii.   <u>Claims Based on Application for a Pardon</u>

Plaintiff claims that because of Defendants' actions, he was prohibited from properly applying for a pardon and supporting that application. However, as explained above, the right of access to courts applies only to prisoners' challenges to conditions of their confinement or to the validity of their convictions or sentences. *Lewis*, 518 U.S. at 354–55; *Silva*, 658 F.3d at 1103. A pardon is none of these. Pardons do not invalidate a conviction or sentence—they are exercises of mercy granted by the government. Accordingly, Plaintiff's pardon allegations do not support a plausible access-to-courts claim.

### C. *Retaliation Claims*

Plaintiff does not expressly assert a retaliation claim. However, his allegation that his time in the computer lab was reduced from 11 hours per week to 3 to 6 hours per week after he filed a lawsuit against IDOC staff suggests he may be attempting to bring such a claim.

The First Amendment includes the right to be free from retaliation for exercising constitutional rights. An inmate asserting a retaliation claim must show the following: (1) "a state actor took some adverse action" against the inmate; (2) the defendant took the adverse action "because of" the inmate's exercise of protected conduct; (3) the action "chilled the inmate's exercise" of protected conduct; and (4) the action "did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

"[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). Rather, when analyzing a prison official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 11

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory motivation is not established simply by showing an adverse action by the defendant *after* protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'"). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about an inmate's exercise of protected conduct—there generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

Finally, even if an inmate proves that his protected conduct was the but-for cause of an adverse action by a prison official, the inmate's retaliation claim fails so long as that action also

reasonably advanced a legitimate penological interest. The state unquestionably has a legitimate interest in maintaining institutional order, safety, and security in its prisons, *Rizzo*, 778 F.2d at 532, and the "plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains," *Pratt*, 65 F.3d at 806.

The Complaint fails to state a claim on which relief may be granted based on the alleged retaliation. Plaintiff alleges only that he filed a lawsuit and that his time in the computer lab was later reduced. This is nothing more than a timing allegation and, as such, is not enough to state a plausible retaliation claim. *See Huskey*, 204 F.3d at 899.

### D.    Claims of Violations of State Law and IDOC Policies

Plaintiff also appears to assert that Defendants have failed to follow IDOC policies and have violated state law. *See, e.g.*, *Am. Compl.* at 14–15. However, violations of state laws or prison policies cannot support a § 1983 claim. *See Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994) (stating that, as long as minimum constitutional requirements are met, a prison need not comply with its "own, more generous procedures"), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Huron Valley Hosp. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989) ("[Section 1983] is thus limited to deprivations of *federal* statutory and constitutional rights. It does not cover official conduct that allegedly violates *state* law.") (relying on *Baker v. McCollan*, 443 U.S. 137, 146 (1979)). "It is not the function of this Court to review regulations established by prison authorities unless a constitutional violation is presented." *Lowrey v. Walton Cnty. Sheriff's Dep't*, No. 3:07-CV-121-CDL, 2008 WL 660332, at *3 (M.D. Ga. Mar. 5, 2008) (unpublished).

Accordingly, Plaintiff's claims based on alleged violations of state law or prison policies are implausible to the extent they are used as support for Plaintiff's § 1983 claims.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 13

To the extent Plaintiff is asserting independent state law claims, he still has failed to state a claim on which relief may be granted under Idaho law. Plaintiff's claims of violations of the Idaho Constitution are implausible because "Idaho does not recognize a direct cause of action for violations of the Idaho Constitution." *Hill v. Cnty. of Benewah*, No. 2:18-CV-00320-DCN, 2020 WL 1049905, at *7 (D. Idaho Mar. 4, 2020) (unpublished), *aff'd*, 843 F. App'x 975 (9th Cir. 2021).

Similarly, the Court has identified no Idaho statute or case law that creates a private right of action for violations of prison policy enforceable by prisoners. Simply put, Idaho does not permit a prisoner to sue for violations of prison policy. Thus, Plaintiff's state law claims regarding Defendants' violations of prison policy are implausible.

Finally, Plaintiff's claims based on Idaho Code § 20-1016 and Regulation 50.01.01.550 of the Idaho Administrative Procedures Act—the statute and regulation governing pardons and commutations in Idaho—also fail as a matter of law. Though Idaho has created a system for prisoners to apply for pardons, the Court has found no support in Idaho law for the proposition that prisoners may sue for alleged obstructions to the pardon process, under either the statute or the regulation.

For these reasons, Plaintiff's state law claims are implausible and must be dismissed.

**4.    Plaintiff's Motion for Preliminary Injunction**

Plaintiff has filed a Motion for a Preliminary Injunction under Rule 65(a) of the Federal Rules of Civil Procedure. In considering whether to issue a preliminary injunction, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987).

Although a preliminary injunction request places a court in the position of preliminarily reviewing the merits of the plaintiff's claims, a preliminary injunction is *not* for the purpose of

INITIAL REVIEW ORDER BY SCREENING JUDGE - 14

adjudicating the merits of those claims. Rather, it is "a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line v. Phoenix Software*, 739 F.2d 1415, 1422 (9th Cir. 1984). Because the record is "insufficiently complete to allow a reliable resolution on the merits" at the preliminary injunction stage, the Court's task is to "review the propriety of the injunction, not the ultimate merits of the case, unless it is clear that the litigation should be terminated." *Id.* The district court is to exercise discretion in such a manner to "minimize the risk that a litigant will suffer an irreparable loss of legal rights in the period before final resolution of the dispute." *Id.*

To be entitled to a preliminary injunction, the moving party must establish the following: (1) the movant is likely to succeed on the merits; (2) the movant will likely suffer irreparable injury if the requested relief is denied; (3) the balance of potential harm favors the movant; and (4) a preliminary injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). The "most important" factor in the preliminary injunction inquiry is Plaintiff's likelihood of success on the merits. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). Likelihood of success "is a threshold inquiry," meaning that "when a plaintiff has failed to show the likelihood of success on the merits," a court does not need to consider the other three *Winter* factors. *Id.* (internal quotation marks omitted).

In deciding whether to issue a preliminary injunction, the Court "is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Internat'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). A court need not hold a hearing on a motion for a preliminary injunction "when the movant has not presented a colorable

INITIAL REVIEW ORDER BY SCREENING JUDGE - 15

factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3rd Cir. 1990).

"Issuing a preliminary injunction based only on a *possibility* of irreparable harm" is inappropriate, as the Supreme Court has held that a preliminary injunction may be granted only "upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22 (emphasis added). "Speculative injury does not constitute irreparable injury" sufficient to warrant granting preliminary injunctive relief. *Goldie's Bookstore Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984). Instead, a plaintiff may obtain a preliminary injunction only where the plaintiff can "*demonstrate* immediate threatened injury." *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). Because "a preliminary injunction is an extraordinary remedy" and is "never awarded as of right," *Winter*, 555 U.S. at 24, the moving party's "right to relief must be clear and unequivocal," *Dominion Video Satellite v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).

As explained above, the only claims upon which Plaintiff will be allowed to proceed are his access-to-courts claims, based on the dismissal of his state post-conviction petition, against Defendants Holmes and Sepeda. Having before it only the allegations in the Amended Complaint, the Court concludes Plaintiff is not likely to prevail on the merits of those claims given the strict legal standards a plaintiff must satisfy under § 1983. Further, Plaintiff has already suffered the injury alleged in those claims—his post-conviction petition was dismissed with prejudice. No injunction can prevent that injury from occurring. Because Plaintiff has already allegedly suffered the injury of which he complains, he has not shown a possibility of future irreparable harm.

For these reasons, the Court will deny Plaintiff's Motion for Preliminary Injunction.

## 5.  Conclusion

Plaintiff may proceed as outlined above. This Order does not guarantee that Plaintiff's claims will be successful. Rather, it merely finds that some are plausible, meaning that they will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[1] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

## ORDER

**IT IS ORDERED:**

1.  Plaintiff may proceed on his access-to-courts claims, against Defendants Holmes and Sepeda, based on these Defendants' alleged refusal to allow Plaintiff to submit evidence along with his response to the state court's notice of intent to dismiss his post-conviction petition. All other claims against all other Defendants are DISMISSED, and Defendants Strauss and Perales are TERMINATED as parties to

---

[1] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to §§ 1915 and 1915A and may be filed only in extraordinary circumstances.

this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[2]

2.    Defendants Holmes and Sepeda will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Amended Complaint (Dkt. 9), a copy of this Order, and a Waiver of Service of Summons to the following counsel: **Karin Magnelli, Deputy Attorney General for the State of Idaho, Idaho Department of Correction, 1299 North Orchard, Ste. 110, Boise, Idaho 83706**.

3.    Should counsel for the IDOC determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, identifying the individuals for whom service will not be waived.

4.    If Plaintiff receives a notice indicating that service will not be waived for an entity or for certain individuals, Plaintiff will have an additional 90 days from the date of

---

[2] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 18

such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them may be dismissed without prejudice.

5.    Unless otherwise ordered, the parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued contemporaneously with this Order.

6.    Any amended pleadings must be submitted, along with a motion to amend, by the later of (a) 150 days after entry of this Order or (b) 150 days after entry of an order denying all or part of a preliminary Rule 12(b) or Rule 56 motion.

7.    Dispositive motions must be filed by the later of (a) 300 days after entry of this Order or (b) 300 days after entry of an order denying all or part of a preliminary Rule 12(b) or Rule 56 motion.

8.    Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

9.    The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

INITIAL REVIEW ORDER BY SCREENING JUDGE - 19

10.     All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

11.     No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

12.     Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

13.     Pursuant to General Order 457, this action is hereby RETURNED to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.



DATED: June 25, 2026

_____
Amanda K. Brailsford
U.S. District Court Judge

INITIAL REVIEW ORDER BY SCREENING JUDGE - 20